IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**DARREN LEE POWELL,**

        **Plaintiff,**

    v.                                  CASE NO.16-3251-SAC-DJW

**JACK LAURIE, et al.,**

        **Defendants.**

## NOTICE AND ORDER TO SHOW CAUSE

On December 15, 2016, Plaintiff, a state prisoner appearing pro se, filed a 42 U.S.C. § 1983 civil rights complaint. The Court conducted a preliminary review of the complaint, dismissed one count and three defendants, and found that the proper processing of the remainder of Plaintiff's claims could not be achieved without additional information (Doc. #10). Defendant Crystal Martin filed a *Martinez* report on July 6, 2017 (Doc. #18). After reviewing the *Martinez* report in conjunction with Plaintiff's complaint and attachments, the Court finds that the remainder of Plaintiff's complaint is subject to dismissal for the reasons discussed below.

1

**Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of such entity to determine whether summary dismissal is appropriate. 28 U.S.C. § 1915A(a). Additionally, with any litigant, such as Plaintiff, who is proceeding *in forma pauperis*, the Court has a duty to screen the complaint to determine its sufficiency. *See* 28 U.S.C. § 1915(e)(2). Upon completion of this screening, the Court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B).

To survive this review, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In applying the *Twombly* standard, the Court must assume the truth of all well-pleaded factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *See Leverington v. City of Colo. Springs,* 643 F.3d 719, 723 (10th Cir. 2011).

Where, as here, the Court has ordered a *Martinez* report, it is used to develop the record to ascertain whether there are any factual or legal bases for the plaintiff's claims. *Janke v.*

2

*Price*, 43 F.3d 1390, 1392 (10th Cir. 1994). The Court may consider the *Martinez* report in dismissing a claim under § 1915(d) but cannot use the report to resolve material disputed factual issues by accepting the report when it is in conflict with the plaintiff's allegations. *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "The [*Martinez* report] should be used to determine whether or not a relevant, bona fide dispute exists, not to resolve such a dispute." *El'Amin v. Pearce*, 750 F.2d 829, 832 (10th Cir. 1984).

**Complaint**

In accordance with the standards outlined above, the Court assumes the truth of the factual allegations made in Plaintiff's complaint for purposes of conducting the screening. The crux of Plaintiff's complaint is that he has been denied appropriate medical care for the treatment of diabetes by the staff of the Atchison County Jail ("ACJ").

In Count 1, Plaintiff claims he was denied proper medication. Mr. Powell was apprehended on August 13, 2016, in Buchanon County, Missouri. Upon apprehension, he was transported directly to a medical provider due to complications with his blood sugar. He was prescribed several medications, including Humalog insulin, Glyburide, and Metformin, and AccuChecks prior to every meal. Plaintiff was taken to the Buchanon County Jail where he remained for six days. While

3

there, the prescribed treatment was followed and Plaintiff did not have further complications.

On August 19, 2016, Plaintiff was transported to ACJ. "[W]ithin the first couple of weeks" of his arrival at ACJ, Plaintiff's insulin and Glyburide were discontinued and his dosage of Metformin was reduced, all by Defendant Physician's Assistant Jane Doe, as recommended by Defendant Crystal Martin, a nurse at ACJ.

In Count 2, Plaintiff alleges he has been denied proper medical auxiliary aides and exams. Upon arrival at ACJ, Plaintiff complained of "difficulty with his eye vision" to Defendant Martin. She stated ACJ would not provide an eye examination. Plaintiff also mentioned his vision problems to Defendant Tammy Jones, a correctional officer, who told Plaintiff he would need to speak with the medical staff, and filed two grievances requesting vision testing, which were denied by Defendants Travis Wright and Jack Laurie. However, since the filing of his complaint, it appears ACJ nursing staff made an appointment for Mr. Powell to have an annual diabetic eye exam on June 1, 2017. Doc. #18-1, p.167.

In Count 3, Plaintiff complains that the medical staff did not perform an A1C test on him until November 9, 2016.[1] He

---

[1] An A1C is a test that is used to determine a person's average level of blood sugar for the past two to three months.

believes this test should have occurred "shortly after" his arrival at ACJ.

In Count 4, Mr. Powell complains of the diet he is being provided at ACJ, stating it is a high carbohydrate diet when it should be a low carb diet. Plaintiff alleges his blood sugar dropped to "a fairly low number a couple of time" the first weekend he was at ACJ due to the change in his diet.

Defendant Martin provided the Court with Plaintiff's medical records from ACJ. Where the records conflict with Plaintiff's account, the Court has accepted Plaintiff's allegations as true. However, the medical records largely do not conflict with the complaint, but they do contain additional details that do not directly conflict with Plaintiff's allegations. For example, according to the medical records, medical staff at ACJ either saw Plaintiff or reviewed his blood sugar readings and adjusted his medication at least 16 times between August 19, 2016, and May 9, 2017. Also, the medical records document several times where Plaintiff was seen eating sweets or trading items from his diabetic tray for cookies or cakes. This appears to be consistent with a grievance Plaintiff attached to his complaint[2], which refers to a message discovered by prison staff that Plaintiff had placed in a book to be given

---

[2] "A written document that is attached to the complaint as an exhibit is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal." *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991).

to his wife. The message said that Plaintiff was going to "try and get released on a medical." Doc. #1-1, p. 3.

In addition to his claims related to medical treatment, Plaintiff complains in Count 6 that he requested the names of several staff members of the jail and was denied that information by Defendants Wright and Laurie.

Finally, in Count 7, Plaintiff states Defendant Wright threatened to retaliate against him as a result of "all the grievances" he has filed, saying "since he now knows I plan on taking legal action that a lot of my avenues just got shut down" and that Plaintiff would "now get the minimal treatment with no opportunity for a chance to participate with the inmate work program."

Plaintiff's request for relief seeks compensatory and punitive damages in the amount of $500,000.

**Analysis**

After conducting its initial review of Plaintiff's complaint, it appeared to the Court that Plaintiff had failed to state a claim for a constitutional violation. However, the Court determined Plaintiff's medical records might provide additional information that could be useful in screening Plaintiff's claims. After reviewing Plaintiff's complaint with the standards set out above in mind, as well as the information contained in Plaintiff's medical records, the Court finds that

6

the complaint is subject to summary dismissal under 28 U.S.C. §§ 1915A(b) and 1915(e)(2) for the following reasons.

**1. Counts 1, 2, 3, and 4 - Denial of Adequate Medical Care**

Plaintiff claims that the medical care he received at ACJ was so deficient that it violated his rights under the Eighth Amendment, or amounted to cruel and unusual punishment. To state a claim for an Eighth Amendment violation based on denial of medical care, a prisoner must show that the defendant exhibited "deliberate indifference to serious medical needs" of the prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The "deliberate indifference" standard includes an objective and a subjective component, both of which must be met to prevail under 42 U.S.C. § 1983 on a claim of medical mistreatment. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need." *Estelle,* 429 U.S. at 104-05. A medical need is considered "sufficiently serious" if it "has been diagnosed by a physician as mandating treatment." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (internal quotation marks omitted). Because Plaintiff has been diagnosed by a physician as suffering from diabetes and requiring treatment, he meets the objective component of the "deliberate indifference" standard.

7

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)). In Mr. Powell's case, he has not shown that his "serious medical need" was disregarded. His own allegations demonstrate that he was being treated. Plaintiff's claim is based on his disagreement with that treatment. However, "[a] mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment." *Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir. 1980). Similarly, a difference of opinion among medical providers about treatment is also not actionable under the Eighth Amendment. *See Johnson v. Stephan*, 6 F.3d 691, 692 (10th Cir. 1993); *Supre v. Ricketts*, 792 F.2d 958, 962-63 (10th Cir. 1986). A prisoner does not make a showing of deliberate indifference where he was simply denied "a particular course of treatment" that he desired. *Callahan v. Poppell,* 471 F.3d 1155, 1160 (10th Cir. 2006).

Plaintiff's allegation that the medical staff at ACJ discontinued two medications and reduced the dosage of a third does not state a constitutional violation. These actions indicate a difference of opinion as to treatment between the medical providers at ACJ and the provider in Buchanon County,

8

not deliberate indifference to Plaintiff's needs. Plaintiff's claim about the timing of the A1C test also reflects only a difference of opinion. Mr. Powell acknowledges the test was performed; it was just not administered when he believes it should have been. Similarly, the diet Plaintiff was provided at ACJ was ordered by the medical staff. Plaintiff may disagree with the diet, but it does not reflect deliberate indifference on the part of ACJ or any defendant.

The bottom line is that none of Plaintiff's allegations demonstrate deliberate indifference to his serious medical needs. Plaintiff's own allegations show he was being treated, not ignored, and the medical records support that.

It appears that Plaintiff's allegations in Count 2 about being denied a diabetic eye exam are more properly assessed as a delay in Plaintiff receiving treatment. Plaintiff complained of vision problems upon his arrival at ACJ and requested an eye exam. A diabetic eye exam was finally scheduled in June of 2017. A delay in providing medical care only rises to the level of an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm. *Oxendine*, 241 F.3d at 1276. "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)(quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)). While the delay

9

here may not have been ideal, in Plaintiff's case he has not alleged that he suffered "substantial harm" as a result of the delay in treatment that occurred.

The Court finds that Counts 1, 2, 3 and 4 of Plaintiff's complaint do not state a constitutional violation and are subject to dismissal for failure to state a claim upon which relief may be granted.

**2. Count 6 – Denial of information**

Plaintiff claims in Count 6 that his First, Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated, as well as the Freedom of Information Act, when Defendants Wright and Laurie refused to give him the names of ACJ medical staff, the food contractor, the medical contractor, and the dietician. Plaintiff does not explain why he believes he has a constitutional right to this information such that denying him the names states a claim under § 1983, and the Court has not found such a right. *See Trentadue v. Integrity Committee*, 501 F.3d 1215, 1237 (10th Cir. 2007)(finding no constitutional violation where federal agency violated the Freedom of Information Act in failing to provide documents requested by plaintiff).

As for Plaintiff's claim that Defendants violated the Freedom of Information Act (FOIA), FOIA is a federal statute that applies only to federal agencies. Kansas does have the

Kansas Open Records Act, K.S.A. 45-215, et seq. (KORA), which is applicable to state agencies. Plaintiff has not alleged a KORA violation, and even if he had, that would be a state claim over which this Court declines to exercise supplemental jurisdiction.

Count 6 of Plaintiff's complaint is subject to summary dismissal for failure to state a claim.

### 3. Count 7 - Retaliation claim

Plaintiff alleges that Defendant Wright threatened to retaliate against him as a result of "all the grievances" he has filed, saying "since he now knows I plan on taking legal action that a lot of my avenues just got shut down" and that Plaintiff would "now get the minimal treatment with no opportunity for a chance to participate with the inmate work program."

To plead a plausible First Amendment retaliation claim, a plaintiff must show (1) that he engaged in a constitutionally protected activity, (2) that he suffered an adverse responsive action that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) that the adverse action was substantially motivated as a response to his constitutionally protected conduct. *Reed v. Heimgartner*, 579 F. App'x 624, 626-27 (10th Cir. 2014); *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010); *Scott v. Churchill,* 377 F.3d 565, 569 (6th Cir. 2004).

Mr. Powell satisfies the first element. The filing of administrative grievances is a constitutionally protected activity. *See Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991).

However, where Plaintiff has difficulty stating a plausible retaliation claim is in the second requirement. The only responsive action Plaintiff alleges was a *threat* of retaliation by Defendant Wright. Plaintiff does not allege that any defendant actually retaliated or took adverse action in response to Plaintiff's filing of grievances or plans to pursue a lawsuit. Not "every response to a prisoner's exercise of a constitutional right gives rise to a retaliation claim." *Dawes v. Walker,* 239 F.3d 489, 492–93 (2nd Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506 (2002). A trivial or de minimis injury, or a complete lack of injury as in this case, will not support a § 1983 retaliation claim. *See Eaton v. Meneley*, 379 F.3d 949, 955 (10th Cir. 2004). While mere threats may support a retaliation claim in certain circumstances, it is difficult to make the required showing where the only adverse "action" is a threat. *See Markovick v. Werholtz*, No. 10-3257-SAC, 2012 WL 415456, at *4 (D. Kan. Feb. 9, 2012), *quoting Strope v. Gibbens,* 2003 WL 1906458, *5–*6 (D. Kan. Apr. 17, 2003) (unpublished); *see also Walker v. Spence*, No. CIVA07CV01848PABKMT, 2009 WL 3074612, at *9 (D. Colo. Sept.

18, 2009), and *Teague v. Hood,* No. 06-cv-01800-LTB-CBS, 2008 WL 2228905, at *10 (D. Colo. May 27, 2008). Here, Plaintiff has not made that showing.

Plaintiff fails to state a plausible claim for retaliation.

**Motion to Appoint Counsel**

Plaintiff has also filed a motion to appoint counsel. Doc. #13. Having considered this motion, the Court finds it should be denied without prejudice. There is no constitutional right to appointment of counsel in a civil case. *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006), *citing Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Id., citing Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995). In deciding whether to appoint counsel, the court should consider "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Rucks*, 57 F.3d at 979; *Hill*, 393 F.3d at 1115. The Court has considered the

relevant factors and concludes that Plaintiff's motion should be denied at this juncture because it is not convinced that any of the claims in the complaint have merit.

**Summary**

For the reasons discussed above, this 42 U.S.C. § 1983 action is subject to dismissal under 28 U.S.C. § 1915A(b) and 28 U.S.C. § 1915(e)(2)(B). Accordingly, the Court will direct Plaintiff to show cause why this matter should not be dismissed. The failure to file a specific, written response waives de novo review by the District Judge, see *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), and also waives appellate review of factual and legal allegations. *Makin v. Colo. Dept. of Corrections*, 183 F.3d 1205, 1210 (10th Cir. 1999). If Plaintiff fails within the time allotted to file a response, this action may be dismissed without further notice. In addition, Plaintiff's Motion to Appoint Counsel is denied.

**IT IS THEREFORE ORDERED** that within twenty (20) days of receipt of this order, Plaintiff shall show cause to the Honorable Sam A. Crow why Plaintiff's complaint should not be dismissed.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Appoint Counsel (Doc. #13) is denied without prejudice.

**IT IS SO ORDERED.**

DATED:   This 11th day of August 2017 at Kansas City, Kansas.

s/ David J. Waxse

**DAVID J. WAXSE
U.S. Magistrate Judge**